O

JS-6

# United States District Court
# Central District Of California
Western Division

| | |
|---|---|
| GLENN BOSWORTH,<br><br>    Petitioner,<br><br>v.<br><br>FELICIA PONCE, Warden,<br><br>    Respondent. | CASE NO. 2:18-CV-01795-ODW<br>(CR-09-00052 ODW)<br><br>**ORDER DENYING §2241 PETITION** |

## I. INTRODUCTION

On February 20, 2009 Bosworth plead guilty to Count 1 of the Information, charging him with violation of 18 USC §2422(b) Use of a facility of Interstate Commerce To Induce a Minor To Engage in Criminal Sexual Activity. After no fewer than nine continuances, on October 22, 2010, Bosworth was sentenced to nine years in prison with 20 years of supervision to follow. The government recommended a sentence of 57 months and made a 5K1.1 motion which was granted. U.S. Probation had recommended a sentence at the mandatory minimum of 10 years imprisonment.

1

The conviction and sentence were affirmed by the Ninth Circuit on February 22, 2012 [CCA 10-50530].

## II. FACTUAL BACKGROUND

From November 28 until the date of his arrest on December 17, 2008, Defendant, who used the screen name SeekingMissRight, engaged in a series of internet chats with an undercover agent, who he believed to be the mother of a 12 year old girl. The purpose of those communications, from the first day, was to induce the young girl's mother to permit the Defendant to have sex with her child. Specifically, beginning on November 28, 2008 defendant, by way of instant messaging, initiated a conversation with an undercover FBI agent, operating from a Los Angeles based computer, in a chat room entitled Special Interests – Open Minded Parent. During this initial conversation, defendant told the FBI agent, whose screen name referenced status as a mother, that he was looking for an "openminded mother" who would allow her daughter to experience sex with an older man, noting that teen boys lacked the requisite sexual experience to properly treat a young girl. Defendant further asked whether the purported daughter, who was identified as nearly 13 years of age, was "developing" and asked her bra size. He then sent a picture of himself and asked the mother to show the picture to her daughter and to in turn send him a picture of the daughter .

In subsequent internet communications, defendant continued to discuss with the mother how he wanted to meet to have sex with her daughter, claiming that he had two sexual experiences with minors and reiterated his belief that there were lots of women who want their daughters to learn about sex from experienced adult males rather than teen boys. In addition, during one of these communications, he sent a picture of a nude male, which he represented as a picture of himself.

As the discussions progressed, defendant arranged a December 9, 2008 meeting with the female FBI agent who assumed the role of the mother, at an Orange county mall, so that they each could develop a comfort level with the other before proceeding with the sexual encounter. During this meeting, in which, the mother advised defendant

2

that her daughter was actually only 12 years old, but would be turning 13 in the near future. During the ensuing conversation, defendant again made reference to a past sexual experience he had had with a young child and further informed the mother that he had child pornography back at this house. In the course of this meeting, the two agreed to meet at a hotel in the immediate future for purposes of him having sex with the child.

On December 9, 2008, defendant initiated another chat with the mother, and then after requesting the daughter's screen name, he chatted with the daughter as well. During the conversation with the daughter, defendant informed her that her mother wanted her "to have a safe lover who will be good to you" and further asked if she had talked to her mom about the conversations that he had been having with her regarding future sex. Later, while chatting again with the mother, defendant noted his opinion that the daughter seemed interested in having sex and asked the mother for a new picture of the daughter, asking if the daughter would send him a topless photo of herself.

The following day, defendant and the mother resumed their internet chats, with defendant discussing at length and in graphic detail the type of sex he intended to have with the daughter and advised the mother that he would show the daughter pictures of child pornography "to show her that other girls enjoy sex."

Over the course of the next several days, defendant and the mother had multiple internet communications in which they agreed that the sexual encounter would take place on December 18, 2008 in a Long Beach hotel. Defendant indicated that he would bring the laptop containing the child pornography, overnight clothing, lotion, and a small vibrator.

Defendant was arrested after he arrived at the hotel. The laptop he had brought with him contained several pictures of child pornography. He brought with him overnight clothing, lubricant, condoms, pills that claim to enhance penis size, gifts for the daughter, and a small vibrator.

3

## III. PROCEDURAL HISTORY

Petitioner discusses his sentencing hearing as though it was a single hearing, from which he has extracted snippets out of context in order to create a false representation of what actually occurred. For example, Petitioner attempts to create the impression that the Court made contradictory indications of its sentencing positions. In fact there were three substantive hearings spanning a period of time during which the Court, then newly retained counsel, would review the transcripts of the internet communications.

After numerous continuances the parties convened for sentencing on September 13, 2010. Petitioner appeared with his then attorney Mark Chambers. The court indicated its intention to reject Probations recommendation for a sentence at the ten year mandatory minimum, but instead would be inclined to impose a sentence at the low end of the range suggested by an adjusted offense level of 25 and a criminal history of I, or 57 - 71 months. During Petitioner's allocution he stated "I did try to turn my affections towards the agent who was the mother, and she encouraged me to go back to talking about the daughter. I was told to bring the things that I brought [to the hotel room.]" (Transcript of Sept. 13, 2010 sentencing hearing, at p. 18 of 28, DE-87.)

The Court expressed its concern that the issue of entrapment had been raised. It was ultimately agreed that sentencing would be continued until after the court could review the transcript of the chats to make a determination whether Petitioner had indeed been the victim of entrapment. The matter was continued to October 4, 2010. (Id. at p. 26 of 28.)

On October 4th Petitioner appeared with new counsel, Michael Khouri. While Mr. Khouri had indicated he was prepared to proceed with sentencing, he admitted that he had not reviewed the transcripts. The Court determined that he would not be able to adequately address the Court's concerns about matters stated in the transcript if he had not read them. The matter was again continued to the 29th to permit him to do so. It was at this hearing where the court suggested to Petitioner that he should come alone, stating to Mr. Khouri that "once you read the transcripts, you will understand that. Okay." (Transcript of Oct. 4, 2010, at p. 10 of 12, DE-88.) In general, the Court's

4

concerns sprung from references by Petitioner that in his view it would have been advantageous had his daughter had a sexual encounter when she was a young girl and that he knows of fathers who have had sex with their daughters.

### IV. LEGAL STANDARD

28 U.S.C. §2255 provides in part that a prisoner in federal custody claiming that the sentence he is serving was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Id.

The prisoner has one year from the date of imposition of the sentence to move the sentencing court for correction or vacation of the sentence. 28 U.S.C. § 2255(f). The court may "entertain and determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C. §2255( c).

Here, no colorable claim could be made that the sentence imposed was in violation of the Constitution, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law. As a result, his 2255 motion was denied. Indeed, the sentence was affirmed by the Ninth Circuit Court of Appeals.

28 U.S.C. §2241 provides in part that a prisoner in federal custody purportedly in violation of the constitution or laws or treaties of the United States may seek a writ of habeas corpus under section 2241. As a general rule a defendant's exclusive procedural vehicle for testing the legality of his detention is via a motion under 28 U.S.C.§ 2255. Absent authorization to do so, granted by the Circuit Court, a defendant may not file successive §2255 applications. (See 2255(h).) Petitioner has already filed an earlier 2255 motion on November 12, 2013 [See D.E.-116; cv-13-8352] Therefore he is procedurally barred from making a successive application under §2255.

There is, however, an exception to the general rule. Under the so-called escape hatch contained in 2255(e), a federal prisoner may proceed by way of a petition under

2241 if, and only if, the remedy under 2255 is "inadequate or ineffective to test the legality of his detention. Section 2255(e) provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

In order to Petitioner to fold himself within the protections of the escape hatch of §2255(e) he must (1) make a claim of actual innocence; and (2) demonstrate that he has not had an unobstructed procedural shot at presenting that claim. *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006). He fails to meet either test.

## V  DISCUSSION

### A. ACTUAL INNOCENCE

Petitioner argues that he is actually innocent of the charge of conviction. This claim apparently rests on his assertion that his recorded conversation(s) with FBI agents after his arrest, were altered. He contends that several missing minutes of the tape recorded statement(s) would establish that he had no interest in a sexual liaison with the fictitious 12 year old girl.[1] He contends that he was at all times focusing his advances on the age appropriate adult woman who was portraying the mother of the alleged 12 year old girl, but who was in actuality an undercover FBI special agent.

In this Court's April 28, 2014 Order denying his 2255 motion, the evidence belying this assertion was conclusively set forth and will not be repeated here. Suffice it to say that it is true that he expressed an interest in the "mother" on more than one occassion,

---

[1] As has been repeatedly stated by the Court, contrary to Petitioner's assertions, the recordings of his interview with the FBI were not filed with the Court and the Court was unaware of their existence at the time of sentencing.

6

but each time was rebuffed. At no time did the "mother" attempt to redirect his attention to her "daughter." Instead, Petitioner relentlessly pursued his designs on the fictitious child, asking if the daughter was interested in sex, whether the mother thought it was advantagious that her first sexual encounter should be with a man as opposed to a teenaged boy, what her bra size was, commenting that he prefers his women to be A-cups because they then look like little girls, he asked for nude pictures of the child, sent a nude picture of an adult male, purportedly being himself and many many other comments which left no doubt of his intentions toward the young girl. And to the extent that he claims all he wanted to do was talk, he drove all the way from San Diego to a hotel in Long Beach to meeet the girl, armed with a laptop containing child pornograohy, and a briefcase containing condoms, lubricants, night clothes, male enhancement pills and a vibrator. Moreover, he provided the mother with a detailed description of precisely what he envisioned during the encounter, and conversation was not a part of it. He is not innocent of the charge. Through many days of on-line chats, plus a face to face meeting with the mother, he left no doubt that he wanted to have sex with a 12 year old girl. He told the mother precisely what he would do to the girl when they finally met, then he acted on his stated intention when he traveled over a hundred miles to meet her at a Long Beach hotel room. Of all the things Petitioner may be, innocent isn't among them.

His only evidence of his innocence is a vague statement that there may be missing portions of his recorded statements to FBI agents, and that those alleged missing portions of recordings would have demonstrated that he was only interested in the mother and it was the mother who steered him to the child. He also claims it was the mother who suggested what he was to bring on the day of the encounter. It wasa this claim which prompted the Court to review the transcripts . Those transcripts left to room for doubt - reasonable or otherwise - of his intentions toward the young girl. His assertions to the contrary are simply blatantly false. At best, his "evidence" can best be described as an utter failure to demonstrate that "in light of all the evidence, it is more likely than not that no reasonable jury would have convicted him" on the instant

offense. *Stevens*, 464 F.3d 898. Indeed the evidence of his guilt, which he conceded at the time of his guilty plea, was overwhelming. Indeed, the court expressly found that his guilty plea was supported by an independent factual basis to support each and every element of the offense.

If further evidence of guilt is necessary, there is Petitioner's own admission of his guilt at his change of plea hearing. He signed a written plea agreement where he expressly admitted his guilt to Count 1 of the Information, charging him with violation of 18 USC §2422(b) Use of a Facility of Interstate Commerce To Induce a Minor To Engage in Criminal Sexual Activity. The elements of the charge were recited to him and he had no questions. The prosecutor recited the facts that the government would be prepared to prove in the event the matter proceeded to trial and he admitted that he had done the things the prosecutor recited; that he was pleading guilty because he did the things charged in the information. He stated, under oath, that he was pleading guilt because he was guilty. To now, over seven years later, profess his innocence rings hollow at best.

B.       He Has Already Had an Unobstructed Procedural Shot at Presenting His Claims.

Clearly Petitioner had unobstructed opportunities to raise each of his claims prior to the instant §2241 Petition and indeed he has done so. Each time his claims of error have been rejected as legally and factually frivolous. Here, he claims to have been blocked in his efforts to raise these claims previously, which simply is not true. He calls the court's attention to what he calls the Court's "conditional order" of April 28, 2014. (See Pet. at p.3). To proceed under §2241 he must demonstrate that the legal basis for his claim did not arise until after he had exhausted his direct appeal and his first §2255 motion. See *Marrero v. Ives*, 682 F.3d 1190, 1192-93 (9th Cir 2012). Not only did the so-called "conditional order" not erect an obstruction to his ability to raise each of the issues he now raises, but these are not claims that first arose after he had exhausted his direct appeal and his first §2255 motion. Indeed, he has raised all of these claims repeatedly.

8

In addition, the Order in question dealt with what he repeatedly refers to as a closed sentencing hearing. The Court made it clear that the sentencing hearing was not closed to the public, for indeed, he requested that his pastor be allowed into the courtroom and he was invited in and he addressed the Court. The court made it clear that the sole concern was having his daughter in the courtroom while discussions would likely occur about his desires to have sex with children. From some of the statements captured in the transcripts of his on-line chats, it appeared that he would have liked to have had sex with his own daughter. Conceding that the Court should not have been concerned with Petitioner's relationship with his daughter or the potential damage to that relationship upon his daughter learning these disturbing facts about her father, the court offered to hold a new sentencing hearing at which anyone he wished to attend could be present. The only thing necessary was for him to advise the court of a date convenient to all concerned. At that hearing, his sentence would be vacated and he would be resentenced. He was given 60 days to advise the court of the date for the resentencing. He failed to do so. Instead , he filed a number of unrelated motions during that 60 day time period, but in none of them did he offer a proposed date for resentencing. He claims that those unrelated filings satisfied the Court's directive to inform the Court of a date convenient for his family to attend a resentencing. That is simply false.

As previously noted, he filed a §2255 motion on November 12, 2013 wherein he raised a claim of inadequate assistance of counsel, a Sixth Amendment claim that his right to an open sentencing hearing had been violated and the alleged *Brady* violation. (See DE-116.) In addition to the §2255 motion, he filed Notices of Appeal contesting what he viewed as an illegal sentence on October 28, 2010 (DE-83); a Notice of Appeal addressing issues beyond those addressed in his §2255 motion on May 21, 2014 (DE-128); a Notice of Appeal from the denial of his recusal motion filed on September 4, 2014 (DE-141); a Notice of Appeal from rejection of his request to be permitted to withdraw his guilty plea filed on September 29, 2014 (DE-145); a Notice of Appeal from

the denial of his motion to be transferred to MDC-LA for resentencing filed on January 16, 2015 (DE-160); a Notice of Appeal from the denial of his motion to withdraw his guilty plea and for the appointment of counsel filed on June 22, 2015 (DE-171); an Amended Notice of Appeal re DE-171 filed September 14, 2015; and a Notice of Appeal from the rejection for filing of documents due to discrepancies filed June 9, 2016 (DE-190.)

Clearly he has had an unobstructed procedural shot at raising his claims, each time he filed a Notice of Appeal. Thus, he fails both prongs of the "escape hatch" and is not entitled to proceed pursuant to §2241.

  C. THIS PETITION IS TIME BARRED WERE HE TO PROCEED UNDER §2255

Assuming Petitioner now wishes his petition to be construed as a successive 2255 motion, and assuming he is able to secure certification from the Ninth Circuit to bring a second §2255 motion, which is unlikely, far more than one year has elapsed since his conviction. It would therefore be time barred. See §2255(f).

Under the statute, the 1-year time period runs from the latest of:

1. The date on which the judgment of conviction becomes final;

2. The date on which the impediment to making a motion is removed;

3. The date on which the right asserted was initially recognized by the Supreme Court;

4. The date on which the facts supporting the claim presented could have been discovered.

Clearly more than one year has lapsed since his 2010 conviction and sentencing. Our attention is called to no impediment which prevented him from seeking relief earlier. Indeed he did seek the same relief in his §2255 motion filed November 12, 2013. (See DE-117.) This §2241 Petition is in reality a second §2255 motion. Consequently the facts supporting the claim presented were known at least as early as November 2013. That is when Petitioner knew of his injury and the facts causing that injury.

It is also worth noting that Petitioner sets forth each and every claim in his so-called placeholder Motion for New Trial filed February 19, 2015 (DE-159). The 1-year statute of limitations has long run. (See *Avila v. Willits Environmental Remediation,* 633 F.3d 828, 841-42 (9th Cir 2011.)

D. WAIVER

As part of his plea agreement, Petitioner expressly waived his right to appeal his conviction on any and all grounds save and except the ground that his guilty plea was involuntary. He makes no claim that his instant conviction was not voluntary and of his free will. Such waivers are and must be enforced. *United States v. Reves*, 774 F.3d 562, 566 (9th Cir. 2014.) The court therefore rejects this claim on this additional ground.

E. THE SENTENCE IMPOSED WAS LEGAL AND WITHIN THE STATUTORY MAXIMUM

Not only is the sentence of 108 months within the statutory maximum of life imprisonment, it is below the mandatory minimum of ten (10) years. (See 18 USC §2422(b).) Petitioner makes a number of claims challenging the legality of his sentence, all of which are specious. For example, he is apparently of the view that the Court is somehow bound by the sentencing recommendations of the government. Courts are not rubber stamps for the prosecution and it is ludicrous to suggest otherwise. Equally absurd is Petitioner's contention that he was improperly placed in Criminal History category 1 based on 0 criminal history points.. He suggests that he more properly belongs in Criminal History category 0. This, and his remaining assertions, do not merit a response.

VI. **CONCLUSION**

Because this Petition is not cognizable under §2241 in that Petitioner fails to satisfy the double prongs of §2255(e) this court is without jurisdiction to provide the remedy he seeks. He would also fail in an attempt to have this petition entertained under §2255 because it would be an impermissible second such motion without having first secured permission from the Circuit Court.

One additional comment, primarily to put to rest just one of many blatant falsehoods which liberally pepper each of Petitioner's filings. In virtually every filing Petitioner claims that his sentencing was witnessed by former gang members of Homeboy Industries, who sat behind the defense table and apparently had full access to the secured spaces off the courtroom. It is also claimed that the Court discussed Petitioner's sentence with these "former gang members." Petitioner apparently failed to notice they were all wearing suits, were well groomed and were conspicuously devoid of facial or other tattoos or any other indicia of gang affiliation. The reason for their presence is simple. They were judicial law clerks and part of the Court's chambers staff. Hopefully, this will put an end to the disparaging remarks directed their way.

For all the above reasons, the Petition is **DENIED**.

DATED: March 13, 2018

_____
Otis D. Wright, II
United States District Judge